FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 SEP 27 PM 3: 05

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

KATHY FOWLER and
LACRETIA GONZALES,

    Plaintiff,

Vs.

RITZ-CARLTON HOTEL COMPANY, LLC;
GEORGE CAVANAUGH; ROBERT LOOMIS;
KATE MONIHAN; JEFF DZIAK; AND
GREG BARDES, individually.

    Defendants.

_____/

CASE NO.:

3:10-cv-884-J-34 JRK

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**I.**

**NATURE OF THE CASE**

1) The Plaintiffs bring this action seeking relief from systemic discriminatory employment practices, based upon race, national origin and/or ethnicity, by RITZ-CARLTON HOTEL COMPANY, LLC., related to the food, beverage, catering, and housekeeping staff at the Amelia Island location.

2) In failing adequately to protect the rights of the Plaintiffs and other minority workers, and in permitting an environment in which their self-esteem and value are questioned, Defendants have injured not only Plaintiffs and other minority workers but their families and loved ones as well; have denied their spouses, loved ones, and children the income due these family units; and, in doing so, have impaired their emotional relationships with their spouses, loved ones, and children.

1

## II.

## JURISDICTION AND VENUE

3) This court has jurisdiction pursuant to 42 U.S.C. 1981, 28 U.S.C. § 1331, 1343, and 1367.

4) All matters complained of herein occurred with the District and Division.

## III.

## THE PARTIES

5) Plaintiffs are qualified minorities who have suffered racial, national original and/or ethnicity discrimination and employment policies and practices at the hands of the Defendants. Plaintiffs were salaried workers who work or worked at the Amelia Island location, in the food, beverage, catering, and housekeeping staff. Plaintiffs are qualified people who have been denied the opportunity for promotion, equal pay, who have been injured because of low retention ratings, who have been disciplined and terminated unfairly, who has been subjected to a hostile work environment, and/or who has been retaliated against because of Defendants' policies and practices of racial, national origin and ethnicity discrimination.

6) Plaintiffs primarily reside within the Middle District Florida. The named Plaintiffs are KATHY FOWLER, an African American woman, and LACRETIA GONZALEZ, a Hispanic woman. The named Plaintiffs have well-over 25 combined years of employment experience with Defendants in the areas of food, beverage, catering, and housekeeping.

7) Defendants are a luxury beach resort company with a location at Amelia Island, Florida, and their individual supervisory staff, doing business in Florida and throughout the world. Defendants are engaged in interstate commerce and employ thousands of persons in the United States. Unless stated otherwise, references to Defendants include all of their successors,

predecessors, affiliates and subsidiaries. Defendants are jointly and severally liable for the discriminatory practices and policies.

8) Defendants have a long history of racial, national origin, and ethnicity discrimination directed toward its minority employees in its hotel locations and even its minority guests. Most recently, at its Naples, Florida location, the corporate Defendant admitted that its supervisory staff acquiesced to the request of racist guests that blacks, Hispanics, and workers with accents not serve them. In doing so, Defendant admittedly *per se* discrimination against its minority staff.

## IV.

## FACTUAL ALLEGATIONS

9) The Plaintiffs, based upon their race, national origin and/or ethnicity and their minority co-workers in the food, beverage, catering, and housekeeping staff at the Amelia Island location have been treated differently, less favorably, than similarly situated Caucasians and non-minority co-workers by Defendants and their culture of discrimination, since 2002 to the termination of Plaintiffs. The conduct of Defendants is continuing in nature, since 2002 through the termination of Plaintiffs.

10) The Plaintiffs have been denied, based upon race, national original, and ethnicity, desirable job assignments, promotional opportunities, management positions, training, equal pay, comparable retention ratings, bonuses and other benefits of employment.

11) The Defendants used the most debasing racial slurs toward Plaintiffs and other minority staff, such as "nigger," "wetback," "watermelon," "mule," and "spic," and have deterred Plaintiffs and other minority employees from seeking promotions, management positions and desirable job assignments; failed to select minorities for desirable job assignments;

3

forced minorities out of leadership positions, regulated minorities to certain events; failed to effectively enforce policies prohibiting race, national origin, and ethnicity discrimination; disciplined Plaintiffs and other minority staff more harshly than their Caucasian counterparts, and retaliated against Plaintiffs for protesting Defendants' discriminatory policies, patterns, and/or practices.

12) The Defendants' upper management have consistently ignored complaints about these unlawful work conditions, inadequately investigated the complaints of Plaintiffs and other minorities workers, and failed to implement steps that would eliminate these unlawful working conditions. Indeed, the Defendants' so-called "investigations" in response to the Plaintiffs' complaints about discrimination have been charades meant only to facilitate and preserve the culture of discrimination at the Ritz-Carlton Amelia Island resort against its minority workers.

13) While the Defendants may have strongly worded anti-discrimination policies, and many of its employees honor the rights of their minority co-workers, far too many of their managerial and supervisory employees are not effectively policed, are rarely disciplined for violating the rights of minorities, and ignore Defendants' stated policies and make employment decisions disadvantageous to minorities. Furthermore, the Defendants' primary bad actors are supervisors and managers, putting the corporate Defendants on notice of the wrongdoing.

14) When management or co-workers are disciplined for violating minorities' rights, the discipline is often too lenient to deter future illegal conduct and, in fact, encourages same. At the Ritz-Carlton Amelia Island, it is common knowledge that if minorities complain about co-worker or managerial misconduct, based upon race, national origin, or ethnicity discrimination, they are often ostracized and denied meaningful future employment opportunities. Minority workers, including Plaintiffs, rather than the perpetrators, frequently are punished by being

overly scrutinized, humiliated, and reassigned to jobs and assignments that under-utilize their skills and make future advancement even more difficult.

15) Co-workers and management's use of the above-described racial slurs demean and verbally harass Plaintiffs and other minority co-workers, which has fostered a hostile work environment.

16) Plaintiffs were initially hired by the corporate Defendant for staff positions within food, beverage, catering, and housekeeping; but were consistently overlooked for advancement less qualified Caucasian workers. Although Plaintiffs eventually reached "captain" levels of employment, they were normally the only minority management in food service and, moreover, the acts of discrimination increased in and around 2003 through the respective dates of their terminations.

17) Some of the Plaintiffs supervisors were Arden Haley, Gary Cochran, Vicki Guest, Beth Ray, George Cavanaugh, Brian McHugh, and Kate Moynihan.

18) Hispanic Plaintiff and other Hispanic workers were told by Defendants' management not to speak Spanish, "that crap" or they should "go back to their own country." The named African American Plaintiff was called "nigger" and "watermelon" and other racially derogatory things. Further minority guests were routinely slurred by Defendants' white management and staff, in front of Plaintiffs, yet no action was taken by Defendants. These minority workers were discouraged and impeded from performing as capable by Defendants' illegal conduct.

19) Although Plaintiffs complained to the Defendants' human resources officers and supervisors, no action was taken. Rather, Plaintiffs were retaliated against by receiving less

5

favorable work assignments, unfair disciplinary action, and later terminated unlawfully in retaliation for their complaints of racial, national origin and ethnicity discrimination.

20) Defendants' pursued, condoned, acquiesced in, and/or failed to eliminate continuing policies and/or patterns or practices that, though often facially neutral, have adversely impacted Defendants' African-American and Hispanic employees and/or that have the intent and effect of denying Plaintiffs and other African-Americans and Hispanics equal job opportunities and conditions of employment. These policies or practices impacting Plaintiffs, include, without limitation:

(1) failing and/or refusing to implement or enforce and follow a uniform posting procedure to ensure that all employees have or had equal notice of job openings and promotions;

(2) failing and refusing to establish and/or enforce a uniform and unbiased process by which Caucasian and African-American and Hispanic employees can apply and compete equally for promotions, and training opportunities;

(3) using a forced curve for compensation, retention, and termination decisions;

(4) failing to conduct meaningful performance reviews and informing employees about how to improve their performance and allowing white employees to prepare their own performance evaluations;

(5) pre-selecting employees for promotions and favorable work opportunities;

(6) promoting individuals into managerial and supervisory positions without determining or attempting to evaluate whether they are racially-biased and intentionally promoting less qualified white counterparts ;

6

(7) promoting racially-biased individuals into managerial and supervisory positions;

(8) relying upon subjective, racially-biased and/or arbitrary criteria used by a predominately Caucasian managerial work force in making job assignment, compensation, training, termination, and promotional decisions;

(9) failing and refusing to consider African-American and Hispanic employees for desirable work assignments, promotions and management positions on the same basis as Caucasian employees are considered;

(10) discouraging and deterring African-American and Hispanic employees from applying for desirable assignments, promotions and management positions for which they are qualified;

(11) failing and refusing to provide African-American and Hispanic employees with the necessary work experience and training to qualify them for more desirable positions on the same basis as Caucasian employees are provided with such experience and training;

(12) paying African-American and Hispanic employees less than similarly situated Caucasian employees;

(13) retaliating against or permitting others to retaliate against African-American and Hispanic employees who protest the defendants' discriminatory policies and/or patterns or practices;

(14) demoting African-American and Hispanic employees or reclassifying their jobs when similarly situated Caucasians do not experience the same degree of demotions or reclassifications;

7

(15) assigning African-American and Hispanic employees retention ratings that are more disadvantageous to them than those assigned to similarly situated Caucasian employees; and, because of those ratings, there are a disproportionate and unfair number of African-American and Hispanic terminations;

(16) subjecting African-American and Hispanic employees to different and more rigorous requirements in order to be eligible for promotional or other job opportunities than those to which Caucasians are subjected;

(17) failing to provide African-American and Hispanic employees with timely and accurate notice of employment opportunities;

(18) subjecting African-American and Hispanic employees to a racially hostile and harassing work environment;

(19) denying African-Americans and Hispanic employees the more desirable work hours and work shifts;

(20) failing to implement effective anti-discrimination investigation and penalty programs; and

(21) failing to monitor and correct the practices of their employees, which adversely impact African-American and Hispanic employees, among other things;

(22) all of which is a continuing pattern of conduct, reaching back to at least 2002.

21) Defendants' pattern and practice of illegal employment racial discrimination has persisted for decades, and continues to the present date, both with regard to Plaintiffs and other African-Americans and Hispanics.

22) Defendants' pattern and practice of racial discrimination has injured Plaintiffs in various ways. By failing to promote Plaintiffs and other African-Americans and Hispanics,

subjecting them to a hostile work environment, subjecting them to different terms and conditions of employment, retaliating against Plaintiffs, and wrongfully terminating Plaintiff, Defendants have at the very least cost Plaintiffs loss of significant income and benefits to which they are entitled. But the injuries are not limited to sums appearing on a pay stub. The racial, natonal origin and ethnicity discrimination have devalued Plaintiffs by telling them they are not worth as much as Caucasians. This has caused immense harm, including physical and emotional pain and suffering.

## V.

## FIRST CAUSE OF ACTION

## VIOLATION OF 42 U.S.C. § 1981

23)     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

24)     Defendants have denied Plaintiffs the same rights to make and enforce contracts as enjoyed by White citizens employed by Defendants, including rights involving the making, performance, modification, and termination of contracts with Defendants and the enjoyment of all benefits, privileges, terms, and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended. Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendants' wrongful conduct.

25) In the employment practices described above, Defendants intentionally engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiffs, and all those similarly situated to Plaintiffs, entitling Plaintiffs and others to punitive damages.

26) By reason of the continuous nature of Defendants' discriminatory conduct persistent throughout the employment of Plaintiffs, including retaliation and wrongful termination,

Plaintiffs are entitled to application of the continuing violations doctrine to all violations alleged herein.

27) As a result of Defendants' conduct alleged in this complaint, Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

28) By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of section 1981, as amended, including an award of punitive damages.

29) Attorneys' fees should be awarded under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

## DECEPTIVE TRADE PRACTICES ACT

30) The Plaintiffs re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

31) This is an action pursuant to Chapter 501, Fla. Stat. (2009).

32) The willful conduct of the Defendants amounts to "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

33) As a direct and proximate result of the Defendants' conduct, the Plaintiffs have been damaged.

34) The Plaintiffs have satisfied all conditions prerequisite to bringing this suit, or such have been waived by the Defendants.

WHEREFORE the Plaintiffs pray this the Court enter judgment in their favor and against the Defendants and award damages pursuant to §501.2075 Fla. Stat., as well as reasonable

attorneys fees and costs, pursuant to §501.2105 Fla. Stat., and any other relief deemed reasonable and necessary by the Court.

### THIRD CAUSE OF ACTION

### COMMON LAW CIVIL THEFT/COVERSION

35) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

36) This is an action pursuant to Florida common law.

37) Defendants knowingly obtained the labor of Plaintiffs, under discriminatory and hostile work conditions, with a felonious intent to unlawfully permanently deprive the Plaintiffs.

38) As a direct and proximate result of the Defendants actions, the Plaintiffs have been damaged.

39) All conditions prerequisite to bringing this action have been satisfied or otherwise waived by the Defendants.

WHEREFORE the Plaintiffs pray this the Court enter judgment in their favor and against the Defendants and award compensatory damages, as well as reasonable costs and any other relief deemed reasonable and necessary by the Court.

### FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT/ QUANTUM MERUIT

40) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

41) The Defendants received the benefit of Plaintiffs' labor, under discriminatory and hostile work conditions, at a reduced pay rate.

...

attorneys fees and costs, pursuant to §501.2105 Fla. Stat., and any other relief deemed reasonable and necessary by the Court.

### THIRD CAUSE OF ACTION

### COMMON LAW CIVIL THEFT/COVERSION

35) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

36) This is an action pursuant to Florida common law.

37) Defendants knowingly obtained the labor of Plaintiffs, under discriminatory and hostile work conditions, with a felonious intent to unlawfully permanently deprive the Plaintiffs.

38) As a direct and proximate result of the Defendants actions, the Plaintiffs have been damaged.

39) All conditions prerequisite to bringing this action have been satisfied or otherwise waived by the Defendants.

WHEREFORE the Plaintiffs pray this the Court enter judgment in their favor and against the Defendants and award compensatory damages, as well as reasonable costs and any other relief deemed reasonable and necessary by the Court.

### FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT/ QUANTUM MERUIT

40) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

41) The Defendants received the benefit of Plaintiffs' labor, under discriminatory and hostile work conditions, at a reduced pay rate.

42) The Defendants' retention of the benefit under circumstances is inequitable, without paying the true value thereof.

43) As a direct and proximate cause of the Defendants' actions and omissions, the Plaintiffs have been damaged.

WHEREFORE the Plaintiffs pray this the Court enter judgment it their favor and against the Defendants and award damages, including compensatory and collateral damages, and reasonable costs, and any other relief deemed reasonable and necessary by the Court.

## FIFTH CAUSE OF ACTION

### BREACH OF FIDICIARY DUTY

44) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

45) Defendants, by virtue of their employer-employee relationship with the Plaintiffs, owed a fiduciary duty to the Plaintiffs.

46) The Defendants breached their duties to Plaintiffs by:

a) failing and/or refusing to implement or enforce and follow a uniform posting procedure to ensure that all employees have or had equal notice of job openings and promotions;

b) failing and refusing to establish and/or enforce a uniform and unbiased process by which Caucasian and African-American and Hispanic employees can apply and compete equally for promotions, and training opportunities;

c) using a forced curve for compensation, retention, and termination decisions;

d) failing to conduct meaningful performance reviews and informing

employees about how to improve their performance and allowing white employees to prepare their own performance evaluations;

e) pre-selecting employees for promotions and favorable work opportunities;

f) promoting individuals into managerial and supervisory positions without determining or attempting to evaluate whether they are racially-biased and intentionally promoting less qualified white counterparts ;

g) promoting racially-biased individuals into managerial and supervisory positions;

h) relying upon subjective, racially-biased and/or arbitrary criteria used by a predominately Caucasian managerial work force in making job assignment, compensation, training, termination, and promotional decisions;

i) failing and refusing to consider African-American and Hispanic employees for desirable work assignments, promotions and management positions on the same basis as Caucasian employees are considered;

j) discouraging and deterring African-American and Hispanic employees from applying for desirable assignments, promotions and management positions for which they are qualified;

k) failing and refusing to provide African-American and Hispanic employees with the necessary work experience and training to qualify them for more desirable positions on the same basis as Caucasian employees are provided with such experience and training;

l) paying African-American and Hispanic employees less than similarly situated Caucasian employees;

m)  retaliating against or permitting others to retaliate against African-American and Hispanic employees who protest the defendants' discriminatory policies and/or patterns or practices;

n)  demoting African-American and Hispanic employees or reclassifying their jobs when similarly situated Caucasians do not experience the same degree of demotions or reclassifications;

o)  assigning African-American and Hispanic employees retention ratings that are more disadvantageous to them than those assigned to similarly situated Caucasian employees; and, because of those ratings, there are a disproportionate and unfair number of African-American and Hispanic terminations;

p)  subjecting African-American and Hispanic employees to different and more rigorous requirements in order to be eligible for promotional or other job opportunities than those to which Caucasians are subjected;

q)  failing to provide African-American and Hispanic employees with timely and accurate notice of employment opportunities;

r)  subjecting African-American and Hispanic employees to a racially hostile and harassing work environment;

s) denying African-Americans and Hispanic employees the more desirable work hours and work shifts;

t)  failing to implement effective anti-discrimination investigation and penalty programs; and

u)  failing to monitor and correct the practices of their employees, which adversely impact African-American and Hispanic employees, among other things.

47) As a direct and proximate result of the Defendants' breaches, the Plaintiffs have been damaged.

48) All conditions prerequisite to bringing this suit have been satisfied or are otherwise waived.

WHEREFORE the Plaintiffs pray that this Court enter judgment in their favor and against Defendants and award compensatory damages, including but not limited to loss of income, lost wages, loss of pecuniary interest

## SIXTH CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

49) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

50) Defendants breached their duties under the employment agreement, even though the employment was "at will" with the Plaintiffs by failing to abide by the covenants of good faith and fair dealing. Rather, the Defendants self-dealt.

51) As a direct and proximate result of the Defendants' breaches, the Jones have been damaged.

52) All conditions prerequisite to bringing this suit have been satisfied or are otherwise waived.

WHEREFORE the Plaintiffs pray that this Court enter judgment in their favor and against Defendants and award compensatory damages, including but not limited to loss of income, lost wages, loss of pecuniary interest.

## SEVENTH CAUSE OF ACTION

## **NEGLIGENT HIRING AND SUPERVISION**

53) The Plaintiffs re-allege the allegations contained in paragraphs, as if fully set forth herein.

54) Defendants were required to make an appropriate investigation of the individual Defendants to their hire and failed to do so.

55) An appropriate investigation would have revealed the unsuitability of the individual Defendants for the particular duty of managing people without regard to race, national origin or ethnicity.

56) It was unreasonable for Defendants to hire the individual Defendants in light of the information they knew or should have known.

57) Defendants further owed a duty the Plaintiffs to properly supervise the individual Defendants and bad-acting coworkers in their duties.

58) Defendants failed to properly supervise the individual Defendants and bad-acting coworkers.

59) As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs have been damaged.

WHEREFORE the Plaintiffs pray that this Court enter judgment in their favor and against Defendants and award compensatory damages, including but not limited to loss of income, lost wages, loss of pecuniary interest.

## NOTICE OF INTENT TO AMEND TO INCLUDE CLAIMS FOR PUNITIVE DAMAGES

60) The Defendants actions and omissions complained of herein were willfully conducted with wanton malice, a depraved heart, and a reckless disregard for the rights of the Plaintiffs.

61) Accordingly, the Defendants are due to be punished financially.

62) Pursuant to §768.72 (1), Fla. Stat., the Plaintiffs intend to amend the complaint to include claims for punitive damages once a reasonable basis in the record is established.

## DEMAND FOR JURY TRIAL

63) The Plaintiffs demand a jury on all issues so triable.

## VI.

## ADDITIONAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for additional relief as follows:

A. For an order declaring that the practices and policies of Defendants set forth in this complaint violate the rights of Plaintiffs under 42 U.S.C. § 1981, as amended, and Florida's state law;

B. For injunctive and equitable relief restraining Defendants from illegally discriminating against Plaintiffs, and those similarly situated providing Plaintiffs the benefits that they would have received but for the illegal discrimination of the Defendants, and ordering Defendants to restrain from retaliation against Plaintiffs;

C. For judgment against the Defendants and in favor of Plaintiffs for all equitable monetary relief available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

D. For judgment against the Defendants and in favor of Plaintiffs for all compensatory and punitive damages available under the law, in amounts to be determined at trial;

E. For an award of attorneys' fees and costs to the extent permitted by law;

F. For pre-judgment and post-judgment interest;

G. For such other and further relief as the Court deems just and equitable; and

H. For an order retaining jurisdiction for five years or until such earlier time as the Court is satisfied that Defendants have remedied the practices and policies set forth in this Complaint and determined to be in full compliance with the law.

Respectfully submitted,

**The Law Office of
Earl M. Johnson Jr.**

*/s/ Earl M. Johnson, Jr.*
Earl M. Johnson, Jr., Esq.
Florida Bar No. 006040
P.O. Box 40091
Jacksonville, Florida 32203
(904) 356-5252 Telephone
(904) 394-3288 Facsimile

Attorney for Plaintiffs

Dated: September 17, 2010