**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KATHY FOWLER and
LACRETIA GONZALES,

                        Plaintiffs,

vs.                                                   Case No.  3:10-cv-884-J-34JRK

RITZ-CARLTON HOTEL COMPANY,
LLC, et al.,

                        Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

**I.  Status**

This cause is before the Court on Defendant's[2] Motion for Sanctions and Incorporated

Memorandum of Law (Doc. No. 39; "Motion for Sanctions"), filed February 28, 2014, and

Defendant's Motion for Award of Attorneys' Fees and Costs to be Assessed Jointly and

Severally Against Plaintiffs and Their Counsel and Incorporated Memorandum of Law (Doc.

No. 40; "Motion for Attorneys' Fees and Costs"), also filed February 28, 2014[3] (collectively,

"Motions").  Plaintiffs Kathy Fowler and Lacretia Gonzales ("Plaintiffs") responded in opposition

---

[1]     Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule
6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen
(14) days after service of this document.  Failure to file timely objections waives a party's right to de novo
review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a); see also Dupree v. Warden,
715 F.3d 1295, 1300 (11th Cir. 2013).

[2]     The caption of the case lists as Defendants Ritz-Carlton Hotel Company, LLC as well
as five individual Defendants.  The five individual Defendants have never appeared in this matter.  All
references to "Defendant" unless otherwise specified are to Defendant Ritz-Carlton Hotel Company, LLC.

[3]     Defendant submitted a proposed Bill of Costs (Doc. No. 41) on February 28, 2014 in
connection with the Motion for Attorneys' Fees and Costs.  The Bill of Costs addresses the same costs
that Defendant moves the Court to tax against Plaintiffs in the Motion for Attorneys' Fees and Costs; that
is, costs incurred in the underlying arbitration.  Compare Doc. No. 41 at p.3, with Doc. No. 40-2 at p.69.
There is a $42.10 difference in the amount requested, which appears to be a mathematical
miscalculation.  Compare Doc. No. 41 at p.1, with id. at p.3.  Given that the same documentation is used
to support the Bill of Costs and the Motion for Attorneys' Fees and Costs, the undersigned substantively
addresses the request made in the actual Motion for Attorneys' Fees and Costs.

to both Motions on March 24, 2014.  <u>See</u> Plaintiffs' Verified Memorandum of Law in Opposition to Defendant's Motion for Attorneys' Fees and Costs and Motion for Sanctions (Doc. No. 47; "Response").  The Motions were referred to the undersigned for a recommended disposition. <u>See</u> Order of Referral (Doc. No. 42).[4]

## II.  Summary of Procedural Background

This case has a long and tortured history.  Plaintiffs initiated this action on September 27, 2010 by filing a seven-count Complaint (Doc. No. 1) against Defendant, their former employer (as well as the five individual defendants who have never appeared in this matter). Plaintiffs brought the following causes of action in the Complaint: (1) discrimination involving "rights to make and enforce contracts," in violation of 42 U.S.C. § 1981; (2) a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.2075; (3) "common law civil theft/conversion"; (4) "unjust enrichment/quantum meruit"; (5) "breach of fiduciary duty"; (6) "breach of covenant of good faith and fair dealing"; and (7) "negligent hiring and supervision[.]" Compl. at 9-16 (emphasis and capitalization omitted).

On January 27, 2011, the parties filed a Joint Stipulation to Stay Proceedings and Submit All Claims to Binding Arbitration (Doc. No. 4; "Stipulation").  According to the Stipulation, both Plaintiffs had entered into binding arbitration agreements as part of their respective employment agreements with Defendant. Stipulation at 2. The parties represented that they agreed the matter should be referred "to final and binding arbitration" and requested that the Court stay this case "pending the outcome of the arbitration." <u>Id.</u> at 3.  The parties

---

[4]        The Order of Referral refers the Motion for Sanctions to the undersigned for a Report and Recommendation; the Motion for Attorneys' Fees and Costs was automatically referred to the undersigned upon filing.

further requested "that the Court retain jurisdiction for the sole and limited purpose of enforcing, vacating, or modifying the arbitrator's award." Id. (citing 9 U.S.C. §§ 9-12).

The Court entered an Order on February 2, 2011 construing the Stipulation as a motion, granting it, and staying the instant case "pending the completion of the arbitration proceedings." Order (Doc. No. 6) at 1.  The Court also directed Defendant to file a status report by June 2, 2011 and "every 120 days thereafter until the arbitration is completed." Id. at 2.  Defendant complied with the Court's directives by filing status reports. See Doc. Nos. 8, 9, 10, 11, 13, 14, 15.

After the filing of a January 23, 2013 status report, on January 24, 2013, Plaintiffs filed a "Motion to Remand Case to Federal Court and Incorporated Memorandum of Law" (Doc. No. 16; "Motion to Remand").  In the Motion to Remand, Plaintiffs made a number of claims of bias on the part of the arbitrator. See generally Motion to Remand.  Because of the alleged bias of the arbitrator and what Plaintiffs claimed was the refusal of the American Arbitration Association ("AAA") to correct the alleged bias, Plaintiffs requested that this Court "take the case away from arbitration and allow Plaintiffs to litigate their claims in this unbiased forum." Id. at 5.  Defendant responded in opposition to the Motion to Remand on February 11, 2013 (Doc. No. 17).  On February 19, 2013, the Court entered an Order (Doc. No. 18) denying the Motion to Remand.  In the Order, the Court noted that "Plaintiffs . . . failed to cite any authority for the requested relief." Id. at 2.

On April 30, 2013, the arbitrator entered two awards finding entirely in favor of Defendant, one against each Plaintiff. See Notice of Filing Awards of Arbitrator (Doc. No. 19); Award of Arbitrator as to Claims of Kathy Fowler (Doc. No. 19-1; "Fowler Award"); Award of

Arbitrator as to Claims of Lucretia Gonzalez[5] (Doc. No. 19-2; "Gonzales Award").[6]  In each, the arbitrator stated that Plaintiffs "presented no evidence whatsoever in opposition to the Motion for Summary Judgment and [the] claims were frivolous[.]" Fowler Award at 8; Gonzales Award at 7.  The arbitrator awarded to Defendant "reasonable attorneys' fees as to be determined by the Court" and unspecified "costs expended in defending th[e] action."  Fowler Award at 8; Gonzales Award at 7.

On May 7, 2013, Plaintiffs filed in this Court a "Demand for De Novo Trial By Jury" (Doc. No. 20; "Demand").  The Court entered an Order on May 9, 2013 (Doc. No. 21) striking the Demand.  In the Order, Plaintiffs' counsel was "cautioned against filing further frivolous documents that simply waste judicial resources." Id. at 3.  On May 20, 2013, Defendant filed a final status report (Doc. No. 22) in which it indicated that it intended "to move this Court for entry of an Order confirming the arbitration awards . . . ." Id. at 1-2.

Thereafter, on May 21, 2013, Defendant filed a Motion to Confirm Arbitration Award and to Enter Judgment on Attorneys' Fees and Costs and Incorporated Memorandum of Law (Doc. No. 23; "Motion to Confirm").  When Plaintiffs failed to respond, on June 11, 2013, the undersigned entered an Order to Show Cause (Doc. No. 25) directing Plaintiffs to respond by June 21, 2013 and show cause why the Motion to Confirm should not be granted.  Plaintiffs timely responded to the Order to Show Cause by filing "Plaintiffs' Response to the Order to

---

[5]    The arbitrator's spelling of "Gonzalez" is different from the spelling of "Gonzales" in the caption of Plaintiffs' Complaint (Doc. No. 1) filed in this Court. There is, however, at least one spelling of "Gonzalez" in the body of Plaintiffs' Complaint. See Compl. at 2. The undersigned uses "Gonzales" because that is the spelling used in this Court's case caption.

[6]    The arbitrator's awards appear in multiple places in the record. All citations to the arbitrator's awards in this Report and Recommendation are to the awards attached to the Notice of Filing Awards of Arbitrator (Doc. No. 19). Because the arbitrator's awards do not contain page numbers, the undersigned uses the pagination assigned by the Court's electronic filing system.

Show Cause, Memorandum of Law in Opposition to Entry of Arbitration Award and Attorney's Fees and Motion to Allow the Statutory Time to File Motion to Vacate Arbitration Award" (Doc. No. 26; "Response to Motion to Confirm").  On July 29, 2013, Plaintiffs filed a "Motion to Vacate Arbitration Award and Request for Evidentiary Hearing" (Doc. No. 28; "Motion to Vacate"), to which Defendant responded in opposition on August 13, 2013, see "Defendant's Response in Opposition to Plaintiffs' Motion to Vacate Arbitration Award and Request for Sanctions" (Doc. No. 32; "Response to Motion to Vacate").

On October 18, 2013, the undersigned entered a Report and Recommendation (Doc. No. 34) recommending that the Motion to Confirm be granted and that the Motion to Vacate be denied.  It was further recommended that the Court reserve jurisdiction to determine the proper amount of attorneys' fees and costs to be awarded to Defendant pursuant to the arbitrator's awards; and that Defendant be directed to file separate motions relating to the fees and costs in the arbitration proceeding and relating to sanctions it was requesting from this Court in having to defend against the Motion to Vacate.  Id. at 15-16.  On February 14, 2014, the Honorable Marcia Morales Howard, United States District Judge, entered an Order adopting the Report and Recommendation, as modified; granting the Motion to Confirm; denying the Motion to Vacate; confirming the awards; and directing Defendant to file a motion(s) related to the requests for attorneys' fees, costs, and sanctions (Doc. No. 37 at pp. 5 n.4, 10-11).  Thereafter, the instant Motions were filed.

Shortly after the filing of the Motions, on March 19, 2014, Plaintiffs appealed to the United States Court of Appeals for the Eleventh Circuit the Judgment of this Court (Doc. No. 38) that confirmed the underlying arbitration awards in favor of Defendant and against Plaintiffs.  See Notice of Appeal (Doc. No. 45).  This Court then entered an Order on April 1,

2014 deferring ruling on the Motions until the conclusion of the appeal (Doc. No. 50).  On August 19, 2014, the Eleventh Circuit entered an Opinion affirming this Court's Judgment (Doc. No. 55; "Opinion").  The mandate of the Eleventh Circuit issued on October 20, 2014 (Doc. No. 56).

Plaintiffs claimed in their Response – filed prior to the disposition of the appeal – that they never had an opportunity to confer in good faith regarding the relief requested in the Motions, see Response at 1 n.2,[7] notwithstanding Defendant's representation to the contrary, see Motion for Sanctions at 16; Motion for Attorneys' Fees and Costs at 13-14.  Given the parties' different accounts of whether they conferred as required by Local Rule 3.01(g), and given the significant change in the procedural posture of the case, on December 4, 2014, the undersigned entered an Order (Doc. No. 61) directing the parties to confer in good faith regarding the relief requested in the Motions.  The parties were further directed to file a joint notice advising the Court what, if any, issues remained pending after the conference.  Id. at 2.  On December 24, 2014, the parties filed a Joint Notice of Compliance With Court Order (Doc. No. 62) in which they represented that they twice conferred in good faith after the entry of the Court's December 4, 2014 Order and that Plaintiffs oppose all of the relief requested in the Motions.  So, the Motions are ripe, in their entirety, for review.

### III.  Parties' Positions

In the Motion for Attorneys' Fees and Costs, Defendant seeks an award of attorneys' fees in the amount of $177,210.50 and costs in the amount of $39,476.51, for a total of $216,687.01 that were expended in its efforts to defend itself in the underlying arbitration.  See

---

[7]       The footnote in the Response is labeled number "22," but it is actually the second footnote.

Motion for Attorneys' Fees and Costs at 3, 13.  Defendant seeks to hold Plaintiffs and their counsel jointly and severally liable for the fees and costs.  Id.  Defendant contends that Plaintiffs' counsel "unreasonably and vexatiously multiplied these proceedings by pursuing frivolous legal theories and recklessly continuing to prosecute[] claims well after discovery that proved that they lacked any plausible legal or factual support whatsoever."  Id. at 3.

In the Motion for Sanctions, Defendant seeks an Order sanctioning Plaintiffs, jointly and severally with their counsel, in the amount of $9,204.50 in attorneys' fees and $42.10 in costs, for a total of $9,246.60 that Defendant incurred in connection with the defense of the Motion to Vacate in this Court.  Motion for Sanctions at 11, 14, 16.  As grounds for seeking sanctions, Defendant relies primarily on B.L. Harbert Int'l v. Hercules Steel Co., in which the Eleventh Circuit warned that sanctions may be appropriate when an arbitration loser later attacks the award in court "without any real legal basis for doing so[.]"  441 F.3d 905, 913-14 (11th Cir. 2006), abrogated on other grounds by, Frazier v. CitiFinancial Corp., 604 F.3d 1313 (11th Cir. 2010).

Plaintiffs respond to both Motions through the single Response.[8]  First, Plaintiffs contend that "this Court has previously ruled that the Ritz employee arbitration agreement in question provides only a $50.00 exposure for arbitration costs to employees," so according to Plaintiffs, the Court may not award attorneys' fees and costs as sought by Defendant.  Response at 6 (emphasis and some capitalization omitted); see id. at 6-8.  Second, Plaintiffs contend the Court cannot award attorneys' fees and costs to Defendant "because the Eleventh Circuit has ruled that such are illegal in the context of employment discrimination arbitrations."  Id. at 8

---

[8]     According to Plaintiffs, they filed the single Response "[b]ecause both motions intersect in law and facts[.]" Response at 1 n.1.  The undersigned granted Plaintiffs leave to exceed the page limitation in filing the Response.  See Order entered March 27, 2014 (Doc. No. 49).

(emphasis and some capitalization omitted).  Third and fourth, Plaintiffs contend their respective discrimination and supplemental claims were not frivolous and therefore they cannot be held liable for attorneys' fees under the prevailing legal standards.  Id. at 10-25.  Fifth, Plaintiffs contend that they should not be sanctioned for bringing the Motion to Vacate because that motion was not found to be frivolous by the Court, id. at 25-26, and "there was no bad faith, litigiousness, or frivolity related to the Plaintiffs' [M]otion to [V]acate," id. at 27.  Sixth, Plaintiffs contend that Defendant should not be awarded costs because "the arbitrator did not award Defendant costs," and in support of this contention, Plaintiffs again argue their exposure under the arbitration agreement is limited to $50.00.  Id. at 27-28 (emphasis omitted).  Seventh, Plaintiffs attack certain specific costs that are listed by Defendant and argue these costs are not recoverable.  Id. at 28-30.

## IV.  Discussion

**A.  Motion for Attorneys' Fees and Costs**

### 1.  Foreclosed Arguments

As explained in detail below, Plaintiffs' first (and part of the sixth), second, third, and fourth arguments in opposition to the Motion for Attorneys' Fees and Costs are far-fetched and foreclosed in light of prior rulings in this case.  These arguments were precluded at the time the Motions were filed, which was post-confirmation of the arbitration awards by this Court, and they are most certainly precluded now, post-appeal of this Court's ruling.

Plaintiffs' first contention (and part of their sixth contention) in opposing an award of attorneys' fees and costs is that the Honorable John E. Steele, United States District Judge for the Middle District of Florida, previously ruled in an unrelated case with the same Defendant, Tranchant v. Ritz Carlton Hotel Co., that Defendant's employment arbitration agreement limits

an employee's exposure to $50.00 if arbitration is undertaken. See Response at 6-8, 27 (citing Tranchant, No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734, at *6 (M.D. Fla. Mar. 31, 2011) (unpublished)). Tranchant involved a different issue: whether arbitration should be compelled pursuant to the arbitration agreement. Tranchant, 2011 WL 1230734, at *1. In Tranchant, Judge Steele granted the defendant's motion to compel arbitration and stayed the case pending the completion of the arbitration proceedings. Id. at *7. In considering the motion, Judge Steele addressed whether the arbitration provision in the plaintiff's employment agreement was substantively unconscionable, in part, because of a $50.00 fee that the employee had to pay to initiate arbitration. See id. at *6. Judge Steele found that the fee prescribed by the agreement "does not impose substantial costs on the plaintiff, as it requires him to pay only $50 to begin the arbitration process." Id. Accordingly, for this and other reasons, Judge Steele found that the agreement was not substantively unconscionable. Id.

To start, obviously the procedural posture of this case is wholly different than the procedural posture of Tranchant. See id. at *1. Plaintiffs here elected to proceed to arbitration without contest. See Stipulation. Only when Plaintiffs became disenchanted with the arbitration process did they launch an attack on it in this Court. After Plaintiffs ultimately lost in arbitration, they unsuccessfully argued to both this Court and the Eleventh Circuit that the awards should be vacated for various reasons, reasons that the Eleventh Circuit deemed frivolous. See generally Opinion.

Plaintiffs apparently attempted to invoke Tranchant in arguing to the Eleventh Circuit that they should not be held liable for attorneys' fees and costs. See Opinion at 13, 13-14 n.8. The Eleventh Circuit found as follows regarding Plaintiffs' attempt:

> [T]he Plaintiffs contend that the Middle District of Florida has previously held that this agreement limits the employee's financial exposure to $50.00.  The Plaintiffs cite an unpublished case, [Tranchant,] but the case says no such thing.

Id. at 13-14 n.8 (citations omitted).

Most importantly, both this Court and the Eleventh Circuit have already decided that the arbitrator's award – including the award of attorneys' fees and costs – stands.  In so deciding, the Eleventh Circuit specifically addressed the issue of whether the arbitrator exceeded her authority by awarding attorneys' fees and costs:

> At the outset, it is unclear whether this argument has been preserved.  But, regardless, it is meritless.  The arbitration agreements the Plaintiffs signed provide the arbitrator authority to award "whatever remedies are allowed by law."  And, the AAA rules (which were incorporated by the agreement) explicitly allow the arbitrator to award attorney's fees and costs.[] The Plaintiffs alleged that the arbitrator exceeded her authority.  Yet, the Plaintiffs['] argument is not that attorney's fees are not a type of "remedy available at law."  Rather, the Plaintiffs essentially argue that if the arbitrator had applied the law correctly, she would not have awarded attorney's fees.  In fact, the Plaintiffs spend eleven irrelevant pages simply discussing the merit of their underlying claim.[9]  We have previously considered and rejected this precise line of argumentation in White Springs Agricultural Chemicals, Inc. v. Glawson Investments Corp., 660 F.3d 1277 (11th Cir. 2011).  There, we explained we will not entertain arguments that the arbitrator "exceeded her powers by acting contrary to the law" because we do not review the arbitrator's award for underlying legal error.  Id. at 1283.  Even though the Plaintiffs present their arguments in terms of the Federal Arbitration Act, they ask us to do what we may not – look to the legal merits of the underlying award.  Id.  Accordingly, the Plaintiffs['] argument is foreclosed by our precedent.[]

Opinion at 13 (citations to the record on appeal and footnotes omitted).

In short, Plaintiffs, having submitted to arbitration and having unsuccessfully sought to vacate the awards – including the attorneys' fees and costs awards – are foreclosed from making all of the arguments set forth in this subsection in opposing the Motion for Attorneys'

---

[9]     Similarly, Plaintiffs did so in this Court in responding to the Motion to Confirm, see Response to Motion to Confirm at 4-15, and Plaintiffs devote a significant portion of their instant Response to recycling the same tired arguments, see Response at 10-25.

Fees and Costs.  Plaintiffs are just plain wrong in contending that "[t]he Court is not bound to enter an award of attorney's fees just because the arbitration agreement and arbitrator say so." Response at 9, 24.

### 2.  Joint and Several Liability for Plaintiffs' Counsel

Defendant asks that the attorneys' fees and costs awarded pursuant to the arbitrator's ruling be assessed jointly and severally against Plaintiffs and their counsel. Motion for Attorneys' Fees and Costs at 3-7.  Defendant argues this relief is warranted pursuant to 28 U.S.C. § 1927 and pursuant to the Court's inherent authority.  Id.  Defendant seeks this relief because counsel "unreasonably and vexatiously multiplied these proceedings by pursuing frivolous legal theories and recklessly continuing to prosecute[] claims well after discovery that proved that they lacked any plausible legal or factual support whatsoever."  Id. at 3.

Section 1927 states: "Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927; see also Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1242 (11th Cir. 2007) (citation omitted).[10] Regarding the Court's inherent power to sanction lawyers, the Eleventh Circuit has stated:

> Invocation of a court's inherent power requires a finding of bad faith.  The court must afford the sanctioned party due process, both in determining that the requisite bad faith exists and in assessing fees.  Due process requires that the attorney . . . be given fair notice that his conduct may warrant sanctions and the reasons why.  Notice can come from the party seeking sanctions, from the court, or from both.  In addition, the accused must be given an opportunity to

---

[10]    "[A]n attorney threatened with sanctions under § 1927 is entitled to a hearing." Amlong, 500 F.3d at 1242 (citation omitted).  Here, no party has requested a hearing and one has not been held. As explained below, however, the Court lacks authority to sanction counsel for his conduct during the arbitration proceedings so a hearing is not necessary.

respond, orally or in writing, to the invocation of such sanctions and to justify his actions.

In re Mroz, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (citations omitted); see also Thomas v.

Tenneco Packaging Co., 293 F.3d 1306, 1320-21 (11th Cir. 2002).[11]

While Defendant urges the Court to use Section 1927 and/or its inherent authority to

sanction Plaintiffs' counsel by holding him jointly and severally liable for the attorneys' fees and

costs, Defendant does not directly address the threshold issue of whether the Court is

permitted to do so in this particular circumstance; i.e., when the lawyer's conduct occurred

during arbitration and not during proceedings before the Court. See Motion for Attorneys' Fees

and Costs at 3-7.  Plaintiffs' counsel fails entirely to respond to the argument that he should

be held jointly and severally liable, so obviously he too has not addressed whether the Court

has authority to impose sanctions on him for his conduct during the arbitration. See generally

_____

[11]        Here, although it is not material to the undersigned's ultimate recommendation on this issue, the undersigned notes that Plaintiffs' counsel has had notice and opportunity to be heard in writing. Defendant clearly and prominently argues that Plaintiffs' counsel should be held jointly and severally liable for any attorneys' fees and costs that are awarded by this Court pursuant to the arbitrator's ruling, invoking both Section 1927 and the Court's inherent authority. See Motion for Attorneys' Fees and Costs at 1, 3-7.  It also provides a number of reasons why it seeks to hold Plaintiffs' counsel liable. See id. Despite this argument, Plaintiffs' counsel does not address the question of whether he should be held jointly and severally liable for any attorneys' fees and costs that are awarded pursuant to the arbitrator's ruling. See generally Response.

        In addition to the notice provided by Defendant in the Motion for Attorneys' Fees and Costs, the undersigned's December 4, 2014 Order directing the parties to confer in good faith regarding the relief requested in the Motions put counsel on notice that the Court was considering whether to hold counsel liable for the attorneys' fees and costs:

        . . . [T]he Court has determined that prior to considering whether to impose sanctions (in the amount of approximately $9,250.00), attorneys' fees (in the amount of $177,210.50), and costs (in the amount of $39,476.51) against Plaintiffs and their counsel, Plaintiffs should be afforded what they believe is a legitimate opportunity to confer in good faith with Defendant regarding the relief requested in the Motions.

Order (Doc. No. 61) at 2 (emphasis added).  The parties were directed by the December 4, 2014 Order to "file a joint notice . . . advising the Court what, if any, issues in the Motions remain pending after the conference." Id. at 3 (emphasis omitted).  In the later-filed Joint Notice (Doc. No. 62), signed by counsel for both sides, the parties simply advised the Court that they conferred and Plaintiffs oppose the relief requested in the Motions. In sum, despite being provided with the opportunity to respond in writing to the invocation of sanctions, see In re Mroz, 65 F.3d at 1575-76, Plaintiffs' counsel has failed to do so.

-12-

Response.  Although the parties have not addressed this threshold issue, the undersigned is convinced that a lawyer may not be sanctioned by a district court for conduct that occurred during arbitration proceedings; accordingly, Plaintiffs' counsel should not be held jointly and severally liable for those attorneys' fees and costs.

A court is not permitted to use its inherent authority to sanction a lawyer for conduct that occurs during an arbitration.  Positive Software Solutions, Inc. v. New Century Mortg. Corp., 619 F.3d 458, 463 (5th Cir. 2010).  In Positive Software Solutions, the district court exercised its inherent authority to sanction a lawyer $10,000.00 in attorneys' fees for her conduct during arbitration.  Id. at 460.  The United States Court of Appeals for the Fifth Circuit reversed, finding that the district court "lacked inherent authority to sanction [the lawyer] for her conduct during arbitration[.]"  Id. at 463.  Regarding a court's inherent authority, the Fifth Circuit stated that it "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function."  Id. at 461 (citation and quotation omitted).  In finding that the district court's inherent authority did not extend to arbitration proceedings, the Fifth Circuit reasoned in part that allowing courts to exercise their authority to sanction conduct in arbitrations would be "in serious tension with the Federal Arbitration Act ('FAA')" because "[b]eyond the narrowly defined procedural powers [set forth in the FAA], the court has no authority to interfere with an arbitration proceeding."  Id. at 461-62 (citation omitted); see also Frazier, 604 F.3d at 1324 (recognizing the bases for vacating an arbitration award are limited by the FAA).

In addition, the Fifth Circuit stated that "perhaps most importantly, [a] sanctions order [by a district court] threatens unduly to inflate the judiciary's role in arbitration."  Positive Software Solutions, 619 F.3d at 462.  The Court went on to state:

> The FAA provides for minimal judicial involvement in resolving an arbitrable dispute; the court is limited to only a few narrowly defined, largely procedural tasks.  But by using its power to sanction, a court could seize control over substantive aspects of arbitration.  The court would, in effect, become a roving commission to supervise a private method of dispute resolution and exert authority that is reserved, by statute, case law, and longstanding practice, to the arbitrator. That supervision is inconsistent with the scope of inherent authority and with federal arbitration policy, which aims to prevent courts from delaying the resolution of disputes through alternative means.

Id.

Although the Fifth Circuit did not have occasion in Positive Software Solutions to decide whether sanctions would be permissible for the lawyer's conduct in arbitration under Section 1927,[12] the reasoning articulated by the Fifth Circuit applies equally to preclude the Court here from sanctioning Plaintiffs' counsel under Section 1927 for the arbitration conduct.  See Positive Software Solutions, 619 F.3d at 462; see also Amlong, 500 F.3d at 1239 (stating "a district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers" (emphasis added) (citation omitted)).  In addition, Section 1927 focuses specifically on conduct of a lawyer "admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case[.]"  Given that "the provisions of § 1927, being penal in nature, must be strictly construed," Norelus v. Denny's, Inc., 628 F.3d 1270, 1281 (11th Cir. 2010) (quotation and citation omitted), the statute apparently does not allow this Court to impose sanctions based upon conduct that did not occur in the case before the Court.

---

[12]   The party moving the district court for sanctions in Positive Software Solutions relied on Rule 37, Federal Rules of Civil Procedure ("Rules"), Section 1927, and the Court's inherent authority, but the district court relied solely on its "purported inherent authority" in imposing the sanctions.  Positive Software Solutions, 619 F.3d at 460.

Importantly, too, the arbitrator here more than likely had authority to sanction Plaintiffs' counsel and chose not to do so. The AAA Employment Disputes Rules ("Employment Rule(s)"),[13] which are incorporated by the parties' arbitration agreements, see Opinion at 13 (finding same), provide the arbitrator with vast and broad authority:

> The arbitrator may grant <u>any remedy or relief that would have been available to the parties had the matter been heard in court</u> including awards of attorney's fees and costs, in accordance with applicable law.

Employment Rule 39(d) (emphasis added). Given that the arbitrator had the power to grant any remedy or relief that this Court could grant, that power necessarily included issuing sanctions. See <u>Hamstein Cumberland Music Grp. v. Williams</u>, 532 F. App'x 538, 543 (5th Cir. 2013) (rejecting an argument that the arbitrator's authority was exceeded when the arbitrator issued monetary sanctions against a party); see also <u>Positive Software Solutions</u>, 619 F.3d at 462 (finding the arbitrator had authority to sanction a lawyer for bad faith conduct when the parties agreed to that in their contract). Indeed, "arbitrators enjoy inherent authority to police the arbitration process and fashion appropriate remedies to effectuate this authority[.]" <u>Hamstein</u>, 532 F. App'x at 543. The arbitrator here obviously knew she had the power to impose sanctions because she essentially sanctioned Plaintiffs by refusing to allow Plaintiffs to file a late response in opposition to Defendant's summary judgment motion. <u>See</u> Opinion at 5 (recounting arbitrator's rulings). Yet, the arbitrator chose not to include Plaintiffs' counsel in the attorneys' fees and costs determination. The clear implication from the arbitrator's fees

---

[13]     The Employment Rules are available on the AAA's website: https://www.adr.org (last visited Feb. 2, 2015).

and costs award is that they were made against Plaintiffs and in favor of Defendant. <u>See</u>

Fowler Award at 8; Gonzales Award at 7.[14]

To be sure, Plaintiffs' counsel in this case engaged in seriously questionable conduct in front of the arbitrator, both in pursuing frivolous claims and in delaying and disrupting the proceedings. The following is a summary of the arbitrator's bases for finding the claims to be frivolous.

- Regarding the race discrimination and retaliation claims, most of the adverse actions identified by both Plaintiffs fell well outside the statute of limitations.

- Regarding the race discrimination claims, both Plaintiffs failed in their depositions to identify any similarly-situated individuals who were treated more favorably.

- Regarding the race discrimination claims, both Plaintiffs failed to identify any pretext for the alleged adverse actions.

- Regarding the race discrimination claim brought by Plaintiff Gonzales, she failed to demonstrate that she was qualified for her position.

- Regarding the hostile work environment claims, most alleged incidents upon which Plaintiffs relied occurred outside the relevant timeframe and were too isolated to be considered part of a continuing violation.

- Regarding the retaliation claims, both Plaintiffs failed to offer evidence of a causal connection between alleged complaints and adverse employments actions.

- Regarding the FDUPTA claims, Plaintiffs conceded they were not consumers of Defendant, a required element of a FDUPTA claim, and also the damages sought were not recognized or permitted under FDUPTA.

- Regarding the civil theft claims, they were frivolous because Plaintiffs did not make the required written demands for bringing such claims and the statute of limitations had expired.

---

[14]    Defendant does not argue otherwise. <u>See</u> Motion for Attorneys' Fees and Costs at 3-7.

- Regarding the unjust enrichment claims, the theory upon which they were brought is not recognized by the law.

- Regarding the claims for breach of fiduciary duty, they were wholly without merit and without basis in law or fact.

- Regarding the claims for breach of the covenant of good faith and fair dealing, they are not recognized by the law.

- Regarding the claims for negligent hiring/supervision, they failed to identify a required independent tort, they did not show any physical impact or injury, and they completely failed to identify who was negligently hired and/or supervised.

See generally Fowler Award; Gonzales Award. Most of these deficiencies that were identified by the arbitrator should have been readily apparent to counsel prior to initiating the case. In fact, as the arbitrator found, many of the claims are not even recognized by the law. Of those that are, Plaintiffs fell woefully short of meeting the required elements or the claims were time-barred. A reasonable investigation by counsel would have revealed these deficiencies.

Counsel also unreasonably delayed and disrupted the arbitration proceedings. The timeline of the arbitration proceedings and the proceedings that were improperly initiated in this Court during the pendency of the arbitration proceedings is set forth in full in the Eleventh Circuit's Opinion affirming the confirmation of the arbitration awards. See Opinion at 2-7.

However bad Plaintiffs' counsel's actions may have been and despite his failure to address the specifics of whether his conduct should subject him to sanctions, for the foregoing reasons, this Court does not have authority to sanction counsel for his conduct during the arbitration proceedings. Accordingly, Defendant's request to hold Plaintiffs' counsel jointly and

severally liable for the attorneys' fees and costs incurred during the arbitration is due to be denied.[15]

### 3.   Amount of Attorneys' Fees

Defendant seeks an award of attorneys' fees in the amount of $177,210.50 for the underlying arbitration proceedings and for Defendant's efforts in this Court to have the awards confirmed.[16]   Motion for Attorneys' Fees and Costs at 3, 7-11.   In support, Defendant filed an Affidavit of William E. Grob, Esq., counsel of record for Defendant (Doc. No. 40-2; see also Doc. No. 39-4; collectively "Grob Affidavit"), which contains more than 100 pages of exhibits reflecting the hours spent by counsel of record and a paralegal in defending their client against Plaintiffs' claims, Grob Affidavit at Exs. 1-2, and the costs incurred in the underlying arbitration, id. at Exs. 3-4.   Defendant also filed an Affidavit of Christine E. Howard (Doc. No. 40-3; see also Doc. No. 39-5; collectively, "Howard Affidavit")[17] in which Ms. Howard, an "'AV' rated attorney practicing in state court, federal court, state and federal courts of appeal, and arbitration proceedings for more than 23 years," and who works for an entirely different law firm

---

[15]   Arguably, this Court could exercise its authority to sanction Plaintiffs' counsel, if appropriate, for his actions in twice attempting to get the Court to intervene in the arbitration proceedings. See LaPrade v. Kidder Peabody & Co., 146 F.3d 899, 903 (D.C. Cir. 1998) (affirming the imposition of sanctions for violating the district court's order staying a case and directing the parties to arbitrate, finding that "[r]ather than interfering with the arbitration proceeding, the district court was attempting to protect that proceeding and the effect of its own order").   The undersigned declines to recommend sanctioning counsel for these actions.   Defendant did not raise counsel's attempt to get this Court to intervene as a specific basis for seeking sanctions against him.   While the Court could consider the issue sua sponte, Plaintiffs' counsel has not had adequate notice of such consideration.   Finally, the Court would be left to speculate as to the fees (using the time sheets submitted by Defendant as a guide, of course) that were incurred by Defendant in litigating those specific matters.

[16]   This request also includes the time spent defending this case prior to the Court staying the case for arbitration.   It does not include time spent in defending against the Motion to Vacate, as that is addressed separately in the Motion for Sanctions.   See Motion for Attorneys' Fees and Costs at 3 n.1.

[17]   The Howard Affidavit contains unnumbered pages so references to it are to the pagination assigned by the Court's electronic filing system.

than the law firm representing Defendant, opines as to the reasonableness of the hourly rates requested.  Howard Affidavit at 2-5.

Plaintiffs have had ample notice and opportunity to be heard regarding the requested amount of fees.  The undersigned, in recommending on October 18, 2013 that the Motion to Confirm be granted and the Motion to Vacate be denied, specifically stated at the end of the Report and Recommendation that the Court should "reserve jurisdiction to determine the proper amount of attorneys' fees and costs to be awarded to Defendant pursuant to the arbitrator's awards"; and recommended that Defendant be directed to file a separate motion (1) indicating the amount of fees and costs requested in connection with defending the case in the underlying arbitration proceeding; and (2) substantiating the request with appropriate documentation" (Doc. No. 34 at pp. 15-16) (emphasis added).  In adopting the Report and Recommendation as modified, Judge Howard specifically incorporated those recommendations (Doc. No. 37 at 11).  Then, in filing the Motion for Attorneys' Fees and Costs, Defendant clearly indicated the amount of fees requested and provided quite a bit of documentation to support them.

Despite Plaintiffs and their counsel clearly being placed on notice, Plaintiffs have failed to make any specific challenges to the reasonableness of the attorneys' fees.  See generally Response.  They simply comment that the requested amount of fees and costs is "astounding," id. at 2, which evidences that they had adequate notice and simply chose not to raise any specific challenges to the amount.  So, the Court is left to decide the issue of reasonableness without input by Plaintiffs.  Cf. Aetna Ins. Co. v. Meeker, 953 F.2d 1328, 1335 (11th Cir. 1992) (stating "[w]here, as in this case, appellant did not request an evidentiary hearing and did not controvert appellee's affidavits which contained detailed information concerning the amount

and the type of legal services provided by appellee's counsel, the district court did not abuse its discretion in failing to hold an evidentiary hearing"); see Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing Gray v. Lockheed Aeronautical Sys., Co., 125 F.3d 1387 (11th Cir. 1997)) (stating "a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal," and accepting "all hours to which the plaintiff and her attorney have not made an objection").

When an award of attorney's fees is made pursuant to a fee-shifting statute,[18] "the guiding light of [the] fee-shifting jurisprudence" is the lodestar approach. City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Perry v. Orange Cnty., 341 F. Supp. 2d 1197, 1208 (M.D. Fla. 2004). The lodestar approach consists of two parts. First, the "lodestar" is calculated, that "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area." Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citing A.C.L.U. of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996)). A reasonable hourly rate is defined as "'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" Barnes, 168 F.3d at 436 (quoting Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)). The burden is upon the fee applicant to "supply[] the court with specific and detailed

---

[18]     42 U.S.C. § 1988 allows a "court, in its discretion," to award a reasonable attorney's fee to a prevailing party in a § 1981 action with limited exceptions. As Judge Howard previously noted, "a review of the Arbitration Awards reflects that the arbitrator applied the criteria set forth in Christiansburg[ Garment Co. v. EEOC, 434 U.S. 412 (1978)]," which contains "the applicable standard for an award of attorney's fees as to Plaintiffs' claims of discrimination." Order (Doc. No. 37) at 10 n.7. After applying that criteria, the arbitrator "ma[de] a determination that Plaintiffs' discrimination claims were frivolous, [and awarded] attorney's fees." Id. (citations omitted).

evidence from which the court can determine the reasonable hourly rate." <u>Norman</u>, 836 F.2d at 1303.  Second, the "lodestar" may be adjusted "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." <u>Dillard</u>, 213 F.3d at 1353 (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).[19]

Defendant requests the following hourly rates for counsel of record: (1) $300.00 per hour for shareholder William E. Grob, who has approximately fifteen years experience "primarily in the area of civil litigation and employment law" (reduced from his normal hourly rate of $455.00), <u>see</u> Grob. Affidavit at 1-2; (2) $240.00 per hour for Kathleen A. Liever, who served as Of Counsel during the case and who has more than six years experience "practicing employment law exclusively" (reduced from her normal hourly rate of $360.00), <u>see</u> <u>id.</u> at 2; and (3) $240.00 per hour for Heather J. Casagrande, former counsel of record, who had approximately seven years experience exclusively in employment law prior to leaving the law firm that represents Defendant (reduced from an unspecified normal hourly rate), <u>see</u> <u>id.</u> at 3. In addition, Defendant seeks $100.00 per hour for the work of Meredith Scott, a Florida Registered Paralegal who has more than ten years experience "primarily in the area of employment law" (reduced from her normal hourly rate of $215.00). <u>See</u> <u>id.</u> Both Mr. Grob

---

[19]       In <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974) (emphasis omitted), the former Fifth Circuit articulated twelve factors that courts should consider in determining fee awards in Title VII cases: (1) "The time and labor required"; (2) "The novelty and difficulty of the questions"; (3) "The skill requisite to perform the legal service properly"; (4) "The preclusion of other employment by the attorney due to acceptance of the case"; (5) "The customary fee"; (6) "Whether the fee is fixed or contingent"; (7) "Time limitations imposed by the client or the circumstances"; (8) "The amount involved and the results obtained"; (9) "The experience, reputation, and ability of the attorneys"; (10) "The 'undesirability' of the case"; (11) "The nature and length of the professional relationship with the client"; and (12) "Awards in similar cases." The <u>Johnson</u> "balancing test has since been displaced by the lodestar formula[.]" <u>Loranger v. Stierheim</u>, 10 F.3d 776, 781 n.6 (11th Cir. 1994). Nevertheless, the Eleventh Circuit has "expressed . . . approval of district courts considering the <u>Johnson</u> factors in establishing a reasonable hourly rate." <u>Id.</u> (citing <u>Norman</u>, 836 F.2d at 1299).

and Ms. Howard attest that the hourly rates are within, if not below, the prevailing market rates for attorneys and paralegals with comparable experience.  Grob Affidavit at 3; Howard Affidavit at 3.  Upon review of the Affidavits and the cases cited by Defendant, the undersigned agrees. See Motion for Attorneys' Fees and Costs at 9-10 (citations omitted).

The undersigned next turns to the number of hours expended.  Defendant represents that its attorneys and paralegal spent a total of 745.60 hours defending itself in the underlying arbitration.  See id. at 11; Grob Affidavit at Ex. 1 p.28.  The total amount of attorneys' fees when multiplying the number of hours by the applicable hourly rates is $174,486.00 (a few thousand less than the amount requested in the Motion for Attorneys' Fees and Costs).[20]  Mr. Grob attests that he "reviewed the contemporaneous time records, applicable billing documentation, records, and supporting data for the work performed on behalf of [Defendant]," and he "exercised billing judgment to eliminate time entries for attorneys and paralegals who were not the primary professionals responsible for the defense of this case."  Id. at 4.  He "also eliminated duplicative attorney and paralegal time entries."  Id.  According to Mr. Grob, "[t]he services for which fees have been charged were actually and necessarily performed."  Id.[21]

Although the amount of attorneys' fees sought by Defendant may appear overwhelming at first glance, these fees were incurred during more than three years of defending against Plaintiffs' claims.  On the whole, and recognizing that Plaintiffs have failed to challenge the

---

[20]      Specifically, there are 118.20 hours for Mr. Grob; 374.40 hours for Ms.  Liever; 170.50 hours for Ms. Casagrande; and 82.50 hours for Ms. Scott.  Grob Affidavit at 5. There are a couple of mathematical errors in the Motion for Attorneys' Fees and Costs (page 11) and Exhibit 1 to the Grob Affidavit (page 28).  Ms. Casagrande's hourly rate of $240.00 times the 170.50 hours expended equals $40,920.00 (not $41,772.50 as stated); and Ms. Liever's hourly rate of $240.00 times the 374.40 hours expended equals $89,856.00 (not $91,728.00 as stated).

[21]      The invoices that reflect Defendant was billed a total of $160,809.50 for attorneys' fees (not including the expenses billed for in the invoices).  See Grob Aff. at Ex. 2.

reasonableness of the fees despite being provided ample opportunity to do so, the undersigned finds that they are reasonable.  See Torres v. City of Orlando, 264 F. Supp. 2d 1046, 1056 (M.D. Fla. 2003) (awarding fees sought when the defendant filed an affidavit attesting to the fees incurred, attached billing records reflecting "actual hours expended," included another corroborating affidavit, and "neither Plaintiff nor Plaintiff's counsel . . . objected to the reasonableness of the fees"), aff'd, 88 F. App'x 391 (11th Cir. 2003) (unpublished table decision).  Accordingly, it is recommended that attorneys' fees be calculated in the amount of $174,486.00.

### 4. Amount of Costs

Plaintiffs do attack the costs sought by Defendant.  But in so doing, they completely misrepresent the findings in the arbitrator's awards, stating that "the arbitrator did not award Defendant costs."  Response at 27.  In reality, the arbitrator did award costs: "As the prevailing party on all counts, [Defendant] shall also be entitled to its costs expended in defending this action."  Fowler Award at 8; Gonzales Award at 7.  Because the arbitrator did not specify the amount of costs to which Defendant is entitled, that issue is for the Court to decide.  The arbitrator did, however, specify after awarding the costs that "[t]he administrative fees of the [AAA] totaling $1,250.00 and the compensation and expenses of the Arbitrator totaling $25,200.00 shall be borne as incurred."  Fowler Award at 8; Gonzales Award at 7.

Defendant seeks a total of $39,476.51 in costs.  Motion for Attorneys' Fees and Costs at 3, 11-13.  Defendant provided the Court with an itemization of the costs sought, see Grob Affidavit at Ex. 3, and documentation and invoices to support that itemization, see id. at Ex. 4. The breakdowns are as follows: (1) "Arbitration Fees" (labeled by the arbitrator as administrative fees and compensation and expenses of the arbitrator) in the amount of

$26,400.00; (2) "Necessary copies" in the amount of $326.34[22]; (3) "Depositions" in the amount of $9,037.07; (4) "Other - Travel to/from Depositions" in the amount of $3,253.00; and (5) "Other - Private Investigation Fees" in the amount of $460.10. Id. at Ex. 3 (emphasis omitted).

Plaintiffs raise a few specific objections to the costs sought by Defendant. Response at 28-30. First, Plaintiffs contend that "the lion's share of" the costs sought "is not recoverable under [28 U.S.C. §] 1920." Id. at 29. According to Plaintiffs, unrecoverable costs include the arbitration fees and expenses; travel costs; the private investigator fees; and postage. Id.

The undersigned does not reach the issue of whether the arbitration fees and expenses in the amount of $26,400.00 are recoverable "costs" in accordance with the arbitrator's awards, because the arbitrator's ruling precludes the Court from shifting the arbitration fees and expenses to Plaintiffs as "costs." The arbitrator was careful to carve out the arbitration fees and expenses from the cost award, instead stating that the arbitration fees totaling $1,250.00 and compensation and expenses of the arbitrator totaling $25,200.00 must "be borne as incurred." Fowler Award at 8; Gonzales Award at 7. Given that the awards have been confirmed, and no one ever raised the issue of whether and to what extent the arbitrator had the power to make such a finding, this Court cannot now shift to Plaintiffs and their counsel the arbitration fees and expenses totaling $26,400.00. Rather, they must be "borne as incurred." Fowler Award at 8; Gonzales Award at 7.

Plaintiffs' remaining arguments focus on whether certain of the costs sought can be taxed under the law. Rule 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing

---

[22] To the extent Plaintiffs claim that Defendant "failed to itemize copying costs as required by this Court," Response at 29 (citations omitted), the undersigned finds sufficient Defendant's notations of: "9/28/2012 Exhibits for Fowler deposition $79.80" and "10/2/2012 Plaintiffs' document production $246.54," see Grob Affidavit at Ex. 3, as well as the supporting invoices, see id. at Ex. 4.

party." Fed. R. Civ. P. 54(d).  "[A]bsent explicit statutory or contractual authorization . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 445 (1987); <u>see also</u> <u>Tiara Condo. Ass'n v. Marsh USA, Inc.</u>, 697 F. Supp. 2d 1349, 1369 (S.D. Fla. 2010); <u>Saadi v. Maroun</u>, No. 8:07-cv-1976-T-24 MAP, 2009 WL 4730533, at *2 (M.D. Fla. Dec. 7, 2009) (unpublished).

Pursuant to 28 U.S.C. § 1920, a court may award the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

While Plaintiffs correctly point out that some of the costs sought are not enumerated in Section 1920, they fail to recognize (even though it was pointed out by Defendant in the Motion for Attorneys' Fees and Costs) that the Eleventh Circuit has specifically held that reasonable out-of-pocket expenses charged to clients but not recoverable under Section 1920 can be included as part of an award pursuant to 42 U.S.C. § 1988.  <u>See</u> <u>Dowdell v. City of Apopka, Fla.</u>, 698 F.2d 1181, 1192 (11th Cir. 1983) ("hold[ing] that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988").  Plaintiffs do not make any specific objections to the

amounts of the costs sought by Defendant, and therefore any objection to those amounts is deemed waived. See, e.g., Lane v. Nationwide Mortg., LLC, No. 6:14-cv-374-Orl-18GJK, 2014 WL 6610909, at *3 (M.D. Fla. Nov. 21, 2014) (unpublished) (citing Barnes, 168 F.3d at 428; Gray, 125 F.3d at 1387)  (deeming unopposed a motion for attorneys' fees and costs when the plaintiffs failed to raise objections "to the quantification of fees and costs").

Upon review of the costs sought (with the exception of the arbitrator's fees and expenses), as well as all of the supporting documentation, see Grob. Affidavit at Ex. 4, and specifically noting there is no objection to the amounts sought, the undersigned finds they are reasonable and properly taxed. See Dowdell, 698 F.2d at 1192 (recognizing travel expenses are generally recoverable under section 1988); Trotter v. Columbia Sussex Corp., No. 08-0412-WS-M, 2010 WL 383622, at *11 (S.D. Ala. Jan. 29, 2010) (unpublished) (citation omitted) (approving private investigator fees in an amount equal to the hourly rate of a paralegal). Accordingly, it is recommended that costs be calculated in the amount of $13,076.51.

## B.    Motion for Sanctions

Defendant in the Motion for Sanctions seeks attorneys' fees in the amount of $9,204.50 and costs in the amount of $42.10, for a total of $9,246.60, for having to defend against the Motion to Vacate.  Motion for Sanctions at 11, 14.  As previously mentioned, the main basis for seeking sanctions is the Eleventh Circuit's warning in Hercules Steel that sanctions may be appropriate when an arbitration loser later attacks the award in court "without any real legal basis for doing so[.]"  Hercules Steel, 441 F.3d at 913.  Defendant asks that Plaintiffs and their counsel be held jointly and severally liable for any sanctions, relying on Hercules Steel, Section 1927, and the Court's inherent authority.  Motion for Sanctions at 9-10, 16.

In <u>Hercules Steel</u>, the Eleventh Circuit warned litigants against attacking arbitration awards without a legitimate legal basis:

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.
>
> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions. A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA. It is an idea worth considering.

<u>Hercules Steel</u>, 441 F.3d at 913-14. The Eleventh Circuit went on to find that sanctions were not appropriate in <u>Hercules Steel</u>, mainly because the parties and their counsel did not "have the benefit of the notice and warning this opinion provides." <u>Id.</u> at 914. The Court cautioned, however:

> The notice [this opinion] provides, hopefully even to the least astute reader, is that this Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases. While [the party] and its counsel did not have the benefit of this notice and warning, those who pursue similar litigation positions in the future will.

<u>Id.</u>

In <u>Travelers</u>, a recent case from the Middle District of Florida addressing this issue, the Court initially imposed sanctions on the plaintiff and its counsel for bringing a baseless motion to vacate an arbitration award, relying on <u>Hercules Steel</u>, Section 1927, and Rule 11. <u>United</u>

States v. Travelers Cas. & Sur. Co. of. Am., No. 6:12-cv-1228-Orl-37DAB, 2014 WL 3594306, at *3 (M.D. Fla. July 18, 2014) (unpublished), reconsideration denied, 2014 WL 5285964 (M.D. Fla. Oct. 15, 2014) (unpublished). The court found that the motion to vacate, while "attack[ing] the arbitration award under a valid statutory provision," was "woefully deficient factually and reflect[ed] the 'never-say-die' attitude that robs arbitration proceedings of their ability to provide speedy, less costly, and final resolution." Id. (citation omitted).   When moved for reconsideration of the imposition of sanctions, the Court denied that motion, but sua sponte amended its original sanctions order to reflect that the sanctions were imposed against only plaintiff and not against its counsel. Travelers, 2014 WL 5285964, at *2. The Court did this, in part, because the defendant "did not cite any cases in which an attorney was sanctioned" pursuant to Hercules Steel. Id. (citation omitted).   The Court also noted that based upon the authorities cited by the defendant, "it was clear that [the plaintiff] risked [Hercules Steel] sanctions, but it was less clear that its counsel did too." Id. Ultimately, the Court found the proper sanction against the plaintiff to be $10,000.00. Id. at 3.

Here, Plaintiffs argue against the Court imposing sanctions for their filing of the Motion to Vacate mainly because the Court never found "that the motion itself was frivolous on its face." Response at 26.  Plaintiffs contend they made valid arguments in support of seeking to vacate the awards, focusing on their arguments related to the arbitrator's alleged evident partiality and the arbitrator's alleged errors in applying the law related to costs and attorneys' fees. Id. at 26-27; see 9 U.S.C. § 10(a) (articulating the bases to vacate an arbitrator's award, including, inter alia, an arbitrator's "evident partiality").

After Plaintiffs filed their Response, the Eleventh Circuit issued its Opinion in this case and found that Plaintiffs' arguments in support of seeking to vacate the award were frivolous.

See generally Opinion.  With regard to the argument about "evident partiality," the Court found it to be "foreclosed by clear precedent in this circuit and . . . frivolous."  Id. at 10.  With regard to the argument about costs and attorneys' fees, as previously mentioned, the Court stated that "it is unclear whether this argument has been preserved.  But, regardless, it is meritless."  Id. at 13.

Notably, the Eleventh Circuit imposed sanctions on Plaintiffs and their counsel for bringing a frivolous appeal of this Court's ruling regarding the Motion to Vacate and Motion to Confirm.  On October 22, 2014, the Court entered a Corrected Order stating:

> Pursuant to the provisions of Federal Rule of Appellate Procedure 38, the Court awards double costs on appeal against Plaintiff, Kathy Fowler, Plaintiff, Lacretia Gonzales, and Attorney for Plaintiffs, Earl M. Johnson, Jr., jointly and severally as a sanction.  The appeal is generally frivolous and the briefs for appellants contain frivolous arguments.

Fowler v. Ritz-Carlton Hotel Co., LLC, No. 14-11197-DD, Corrected Order (11th Cir. Oct. 22, 2014) (citations omitted).

Plaintiffs and counsel have had the process they are due, and the undersigned finds that they should all be sanctioned under Hercules Steel and (to the extent necessary) under the Court's inherent authority for bringing the Motion to Vacate.[23]  As far as notice, Plaintiffs and counsel were put on notice first by the Hercules Steel case that sanctions are possible when seeking to vacate an arbitrator's award without any legitimate legal basis.  As far as an opportunity to be heard, the undersigned declined to recommend imposing sanctions in

---

[23]       The undersigned does not rely on Section 1927.  As discussed supra, the Court has not held a hearing as required prior to sanctioning a lawyer under Section 1927.  See Amlong, 500 F.3d at 1242 (citation omitted).  A hearing is not necessary based upon the undersigned's recommended use of the Court's inherent authority (which requires the opportunity to be heard either orally or in writing, see In re Mroz, 65 F.3d at 1575-76) and especially in light of Plaintiffs' failure to respond to the bulk of Defendant's arguments despite being placed on clear notice and having the opportunity to do so.  A hearing would serve to unnecessarily reward Plaintiffs and their counsel by providing another bite at the apple.

October 2013 in connection with the Motion to Vacate and Motion to Confirm because "Plaintiffs ha[d] not had an opportunity to respond to" Defendant's request for sanctions (Doc. No. 34 at 15). It was therefore recommended that the request for sanctions be denied without prejudice to renewal in the form of a motion, id. at 15, 16, and the recommendation was adopted (Doc. No. 37 at 5 n.4). The instant Motion for Sanctions complied with the Court's directives. And, of course, Plaintiffs filed the Response arguing against the imposition of sanctions, so they have been heard.

It is clear that Plaintiffs and counsel here assumed the "never-say-die" attitude that the Eleventh Circuit warned against, and they did not have an objectively reasonable belief that they would prevail on the Motion to Vacate. Hercules Steel, 441 F.3d at 913; see also Travelers, 2014 WL 3594306, at *3. It is also clear that Plaintiffs and counsel made frivolous arguments in seeking to vacate the arbitrator's awards, both in this Court (although the Court did not expressly make that finding previously) and in the Eleventh Circuit. See generally Opinion. In light of the notice given to Plaintiffs and counsel by Hercules Steel and in light of the arbitrator's findings regarding the frivolity of their claims, Plaintiffs' and counsel's Motion to Vacate, which included an attempt to relitigate their arbitration issues in this Court, amounted to sanctionable bad faith because they knowingly and recklessly raised frivolous arguments in support of seeking to vacate the awards. See Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (stating the court must find bad faith prior to sanctioning with its inherent authority, which requires "'knowingly or recklessly rais[ing] a frivolous argument'" or other conduct inapplicable here (quoting Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997))); see also Thomas, 293 F.3d at 1320 (citation omitted). Accordingly, the

undersigned finds it appropriate to sanction Plaintiffs and their counsel pursuant to <u>Hercules Steel</u> and (to the extent necessary) pursuant to the Court's inherent authority.

The undersigned recognizes there are a number of unpublished cases cited in <u>Travelers</u> in which courts imposed <u>Hercules Steel</u> sanctions on the party itself and not on counsel.  <u>See</u> <u>Travelers</u>, 2014 WL 5285964, at *2 (collecting cases); <u>but see</u> <u>SII Invs., Inc. v. Jenks</u>, No. 8:05-CV-2148-T-23MAP, 2006 WL 2092639, at *5-7 (M.D. Fla. July 27, 2006) (unpublished report and recommendation recommending sanctions against counsel in accordance with <u>Hercules Steel</u> and Rule 11[24]), <u>case settled and closed prior to ruling on report and recommendation</u>, No. 8:05-cv-2148-T-23MAP (Doc. No. 30).  Here, distinguishable from <u>Travelers</u>, counsel was on clear notice that Defendant was seeking sanctions against him as well as his clients. <u>Compare</u> <u>Travelers</u>, 2014 WL 5285964, at *2.  Despite being placed on clear notice, counsel failed to address the issue of whether he should be held jointly and severally liable with his clients.  <u>See generally</u> Response.  In short, and for all of the foregoing reasons, the unique circumstances of this case make the imposition of sanctions against counsel and Plaintiffs appropriate.

As to the amount of the attorneys' fees in defending against the Motion to Vacate, Defendant seeks $9,204.50.  <u>See</u> Motion for Sanctions at 11.  Again, Plaintiffs fail to challenge the reasonableness of the fees sought in the Motion for Sanctions.  <u>See generally</u> Response. Similar to the Motion for Attorneys' Fees and Costs, Defendant provides ample support and documentation for the request.  <u>See</u> Grob Affidavit at 6, Exs. 2, 5.  For the same reasons articulated <u>supra</u> in Section IV. A. 3., the undersigned finds the requested hourly rates should

---

[24]     The undersigned does not rely on Rule 11.  Defendant does not argue for Rule 11 to apply, and counsel was not placed on notice of potential Rule 11 sanctions.

be awarded.  In addition, the undersigned has reviewed the time sheets submitted and finds that the 43.80 hours spent in defending against the Motion to Vacate, see Grob Affidavit at 6, Ex. 5, are reasonable, especially in light of Plaintiffs' attempt to essentially relitigate the entire arbitration through the Motion to Vacate.  Accordingly, attorneys' fees should be calculated as $9,204.50.

Finally, Defendant seeks $42.10 in costs for "Other – Fees for transmittal of required materials to district court[.]" Grob Affidavit at Ex. 6 (emphasis and some capitalization omitted); see id. at 6.  Defendant provides the invoice for this service.  Id. at Ex. 7.  Noting that this cost is part of a sanction under Hercules Steel and the Court's inherent authority (and not pursuant to Section 1920), the undersigned finds it appropriate.

## C. Ability to Pay

There is one other issue the Court needs to address but does not have before it sufficient information to do so: ability to pay.  Notwithstanding all of the above findings regarding the Motion for Attorneys' Fees and Costs, "[t]he law in [the Eleventh C]ircuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988." Baker v. Alderman, 158 F.3d 516, 528 (11th Cir. 1998); see, e.g., Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982) (stating "a district court awarding attorney's fees to a prevailing Title VII defendant should consider . . . as a limiting factor, the plaintiff's financial resources").  And, notwithstanding the findings regarding the Motion for Sanctions, when sanctioning conduct under a court's inherent power, "[the] court must take into consideration the financial circumstances of the party being sanctioned." Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002).

Inexplicably, despite facing hundreds of thousands of dollars in potential liability, Plaintiffs and their counsel have not provided any information regarding Plaintiffs' ability, or lack thereof, to pay the hefty fees that were incurred by Defendant in the arbitration and in defending against the Motion to Vacate.  Nor does the Court have before it any information regarding Plaintiffs' counsel's ability, or lack thereof, to pay the sanctions recommended herein. Accordingly, it is recommended that the Motion for Attorneys' Fees and Costs be provisionally granted only to the extent that the Court find $174,486.00 in attorneys' fees and $13,076.51 to be reasonable and awardable to Defendant to be paid by Plaintiffs, subject to a determination of Plaintiffs' respective abilities to pay.[25]  It is further recommended that the Motion for Sanctions be provisionally granted only to the extent that the Court find Plaintiffs and their counsel are liable to Defendant for the $9,204.50 in attorneys' fees and $42.10 in costs incurred in defending the Motion to Vacate, subject to a determination of Plaintiffs' and their counsel's respective abilities to pay.  As to Defendant's request to hold Plaintiffs and counsel jointly and severally liable for this sanction, ultimate ruling on that request should be deferred pending consideration of individual ability to pay.  See Martin, 307 F.3d at 1337 (concluding that "the court abused its discretion by imposing joint and several liability without considering whether each [sanctioned person] individually had the ability to pay the sanction").  Plaintiffs and counsel should be provided fourteen days following the entry of an Order on the instant Motions to move the Court to reduce the fees and costs awards, if appropriate, based upon their respective abilities to pay.  Any such motion should include sworn and detailed affidavits

---

[25]      As explained supra, part IV. A. 2., Defendant's request to hold Plaintiffs' counsel jointly and severally liable for these attorneys' fees and costs is due to be denied.

regarding Plaintiffs' and counsel's[26] financial status, should include specific reduction requests, and should provide authority to support any requested reductions.

### V.  Conclusion

For all of the foregoing reasons, it is

**RECOMMENDED THAT:**

1.     Defendant's Motion for Sanctions and Incorporated Memorandum of Law (Doc. No. 39) be **PROVISIONALLY GRANTED** only to the extent that the Court impose sanctions against Plaintiff Kathy Fowler, Plaintiff Lacretia Gonzales, and their counsel, Earl M. Johnson, Jr., for filing the Motion to Vacate, in the total amount of $9,246.60 ($9,204.50 for attorneys' fees and $42.10 for costs) to be paid to Defendant Ritz Carlton Hotel Company, LLC, **subject to a determination of Plaintiffs' and counsel's respective abilities to pay**, and **DEFERRED** to the extent the Motion seeks to hold Plaintiffs and counsel jointly and severally liable for the above amounts.

2.     Defendant's Motion for Award of Attorneys' Fees and Costs to be Assessed Jointly and Severally Against Plaintiffs and Their Counsel and Incorporated Memorandum of Law (Doc. No. 40) be **PROVISIONALLY GRANTED in part, and otherwise DENIED.**

   A.     The Motion should be **PROVISIONALLY GRANTED** to the extent that the Court should award Defendant reasonable attorneys' fees and costs in the total amount of $187,562.51 ($174,486.00 for attorneys' fees and $13,076.51 for costs), to be paid by Plaintiffs, **subject to a determination of their respective abilities to pay**; and

---

[26]     If counsel does not want the Court to consider his ability to pay, he may say so in the forthcoming motion and will not be required to submit financial documentation.

B.     The Motion should be **DENIED** in all other respects.

3.     Plaintiffs and counsel be provided **fourteen days** following the entry of an Order on the Motions to move the Court to reduce the fees and costs awards, if appropriate, based upon their respective abilities to pay.  Any such motion should include sworn and detailed affidavits regarding Plaintiffs' and counsel's financial status, should include specific reduction requests, and should provide authority to support any requested reductions.

4.     The Court withhold final ruling and judgment on these matters pending a determination of Plaintiffs' and counsel's respective abilities to pay.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 2, 2015.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record